**Frances McCLELLAND, Individually and as Personal Representative of the Estate of Richard L. McClelland, Deceased, Plaintiff,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

Civ. Nos. S 87–2622, S 87–2966 to S 87–2971, S 88–45, S 88–153, S 88–1015, S 88–2820, S 88–2822 and S 88–3102.

United States District Court,
D. Maryland.

April 25, 1990.

Martin H. Freeman, Patricia P. Richardson, and Freeman and Richardson, P.A., Bethesda, Md., for plaintiff.

James K. Archibald, Benjamin R. Civiletti, and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

These consolidated cases are actions by former workers at the now-closed Cumberland, Maryland tire plant of the Kelly–Springfield Tire Company (hereinafter K–S), in which they assert claims against the corporate parent of K–S, the Goodyear Tire & Rubber Company (hereinafter Goodyear). The plaintiffs (or their decedents) have all suffered from various physical ills that they blame on exposure to toxic chemicals in their workplace, and for which they now seek recompense from Goodyear on various tort theories. After a period of discovery on issues of causation, the defendant moved for summary judgment on the ground that causation could not be proved by a preponderance of the evidence. The cases were referred to Magistrate Chasanow of this Court who carefully reviewed the parties' voluminous filings on the summary judgment motion, held hearings, and rendered a Report and Recommendation to the Court on January 31, 1990, wherein she recommended that summary judgment be entered in favor of Goodyear on two of the theories of liability in the case, *viz.*, strict liability and breach of warranty, but denied on the remaining two theories espoused by the plaintiffs, *viz.*, negligence and fraud. As one might expect, both parties timely filed objections to the Magistrate's recommended decision. The Court has fully reviewed the record developed before the Magistrate (which did not include any testimony *viva voce* as to which credibility must be re-assessed, *see United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)), and it has considered *de novo* all the matters that were before the Magistrate. Additionally, the Court called for briefing *sua sponte* on a potentially dispositive issue that was not considered by the Magistrate. Because the parties' briefs so thoroughly discuss their positions, no oral argument on the objections is deemed necessary.

The facts need be stated only briefly. The plaintiffs, precluded from damage suits against their immediate corporate employer, K–S, by the exclusivity provisions of the Maryland Workers' Compensation Law as it applies to occupational diseases and injuries, *see* Md.Ann.Code, art. 101, §§ 15 and 22 (1985), have focused upon Goodyear as a source for tort compensation for their illnesses, which, they now contend, were caused by Goodyear's tortious conduct in furnishing various toxic tire-making chemicals to K–S without adequate concern for the K–S workers' health. The Magistrate concluded that, as to the product-liability based claims, *i.e.*, strict liability and breach of the U.C.C.'s warranties, the plaintiffs' evidence was insufficient to create a jury question were the case in a directed verdict posture under the applicable standard of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). She concluded that the plaintiffs could not show, by a preponderance of the evidence (indeed that they have no evidence, R & R at 15), that any particular, identifiable Goodyear-supplied chemical was a legal cause of their injuries.

Having reviewed the record *de novo*, this Court agrees. Plaintiffs' attempts to hold Goodyear responsible, under product liability theories, for the total "toxic soup" they claim existed in their workplace, without the ability to adduce competent evidence that a reasonable fact-finder could view as showing a greater than 50% chance of a causal connection between any such product and the specific injuries they allegedly suffered, must fail. Maryland has not adopted the "market-share" theory of product liability, of which the plaintiffs here assert a microcosmic variant. Thus, the Court concludes that the plaintiffs must suffer summary judgment on their product liability claims.

▮▮▮ The situation as to the plaintiffs' negligence and fraud claims is somewhat more complicated. The plaintiffs' basic theory on this claim is best stated in their Reply to Objections of Goodyear to Magistrate's Report and Recommendation, at pp. 4–6. Essentially, they claim that Goodyear either (or both) negligently or deceitfully failed in its duty to take care to safeguard plaintiffs' health and to warn them of the dangers inherent in the chemicals that plaintiffs worked with in making tires. They, in fact, characterized the K–S Cumberland plant as a "captive plant" with regard to the amount of control that Goodyear allegedly exercised over the plaintiffs' working environment at K–S, in regard to toxic chemical exposure and issues of workplace safety and health. Not surprisingly, plaintiffs later beat a hasty retreat from this "captive plant" language in their Memorandum on the issue of exclusivity of the Workers' Compensation remedy, but, in this Court's judgment, the record supports plaintiffs' own characterization of K–S as Goodyear's captive on workplace safety and health issues.

The Magistrate concluded that there was a genuine dispute of material fact on these theories of liability that precluded summary judgment. With all respect to her, this Court does not perceive the existence of such a dispute, nor does it feel that the record should be further developed in this regard. The plaintiffs' counsel, a sophisticated attorney who has handled a number of other, similar cases against Goodyear that did not go to trial, *see Heinrich v. Goodyear Tire & Rubber Co.*, 532 F.Supp. 1348 (D.Md.1982), was not unfairly "sandbagged" by Goodyear's motion. Counsel should have anticipated that Goodyear would move for summary judgment on all arguable aspects of the Goodyear motion. Counsel should have anticipated that Goodyear would move for summary judgment on all arguable aspects of the causation issue, and supplemental argument was heard by the Magistrate on all issues. The Court is of the opinion that plaintiffs have not adduced evidence that would allow a reasonable fact-finder to conclude that it was more likely than not that any particular, identifiable negligent or intentional conduct by Goodyear (and not by K–S) was the cause of any of the plaintiffs' particular illnesses. *See, e.g., Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 781 (E.D.N.Y.1984). Because, even taking the inferences to be drawn from the plaintiffs' experts testimony in the light most favorable to plaintiffs, as the Court must do on summary judgment, it would be impossible for them to show by a preponderance that any particularly, identifiable conduct by Goodyear was in any sense the proximate cause of their particular illnesses, *see Owens by Owens v. Bourns Inc.*, 766 F.2d 145, 150 (4th Cir.1985), defendant is entitled to summary judgment on the negligence and fraud claims. To hold otherwise would be, again, to adopt a microcosmic variant of the "market share" approach, albeit under more traditional tort theories than product liability theories. It would impose liability on too slender a reed to be tolerated under Maryland law, one not rising above the level of *post hoc, ergo propter hoc*. Blame, in the legal sense, cannot be so easily assigned, even where

unfortunate consequences ensue. One reason for the extension of workers' compensation laws to cover occupational diseases (which would clearly encompass plaintiffs' cases) was undoubtedly the difficulty of proving proximate causation for such diseases under traditional tort concepts. That such difficulty exists does not warrant allowing these cases to proceed to trial. Because, at the end of the day, plaintiffs cannot adduce evidence legally sufficient to link Goodyear's conduct to their individual illnesses, there are no triable tort issues presented. To the extent they are contrary to its conclusion, this Court rejects the cases of *Aumiller v. Raybestos–Manhattan*, No. Y 81–585 (D.Md. 12/29/82) and *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo. Ct.App.1988). The former involved only one well-known toxic substance, asbestos, whereas the latter involved clearly egregious conduct by the only conceivably responsible polluter of the plaintiffs' neighborhood environment. *See discussion in Alcolac Inc. v. St. Paul Fire & Marine Insurance Company*, 716 F.Supp. 1541, 1543–45 (D.Md.1989).

■ The Court next turns to the question supplementally briefed by the parties, *viz.*, whether the exclusive remedy provided by the Maryland Workers' Compensation Law extends to Goodyear as the corporate parent of K–S. Although the existence of independent grounds for summary judgment make it unnecessary to the Court's decision to answer this question, the Court would, if the question were presented to it (*i.e.*, assuming that proximate causation could be proved on the negligence and fraud theories), answer in the affirmative. The courts in a number of states, including Maryland, have recognized that a parent company can be an employer entitled to the exclusivity protection of the workers' compensation laws. *See cases collected in* 2A A. Larson, *The Law of Workmen's Compensation*, §§ 72.-40 and 72.80 (1989). A recent reported Maryland case, from the Court of Special Appeals, addresses the point. *Dolan v. Kent Research & Manufacturing Co.*, 63 Md.App. 55, 491 A.2d 1226 (1985). It is true that, in *Dolan*, the court focused on traditional aspects of corporate control (such as identity of directors and officers, payroll control, and fiscal practices) usually associated with the process of piercing the corporate veil (though in an inverse way) and of employer control over an employee (such as dictating the manner of job performance). But this case is entirely distinguishable from *Dolan*, and this Court is of the opinion that where, as here, the *particular practices causing the plaintiff's injury* are said to be so dominated and controlled by the corporate parent that the actual employer is a mere captive of that parent (as was conceded by the plaintiffs in the filing cited *ante*), then it would frustrate the purposes of the workers' compensation law, *i.e.*, to give both employees and employers a sure, yet simple and exclusive source of compensation for occupational diseases, if the Court were to disregard the actuality of corporate control over the allegedly injurious practices and hold that the corporate parent was not an employer for workers' compensation purposes. In this connection, the traditional, generalized control tests for determining employee-employer status and for piercing the corporate veil, inversely applied as in *Dolan*, are obviously inadequate and ill-suited. Here, there was no actionable independent duty assumed by Goodyear, because Goodyear was acting as plaintiffs' employer, not as an outsider who assumed extra duties, when it performed the traditional employer's tasks associated with workplace safety and health in its "captive plant." *See, e.g., Love v. Flour Mills of America*, 647 F.2d 1058, 1062–63 (10th Cir.1981).

■ The plaintiffs argue that, even if the Court were to apply the exclusivity provision of the Workers' Compensation Law, it would not extend to the fraud claim they have pleaded. It is true that the Workers' Compensation Law's shield from suit does not extend to certain intentional torts, but such excluded torts are only those in which it is alleged that "the employer had determined to injure an employee or employees within the same class and used some means to accomplish this goal." *Johnson v. Mountaire Farms*, 305 Md.

246, 258, 503 A.2d 708 (1986). Of course, the present complaints come nowhere near alleging the degree of intent to injure required under *Johnson.* (Even if they adequately pleaded common-law fraud, they would be insufficient.) Furthermore, there is a substantial question as to whether the common-law concept of the intent to deceive and defraud incorporated into the tort of deceit in Maryland, *see Martens Chevrolet v. Seney,* 292 Md. 328, 333, 439 A.2d 534 (1982), extends beyond defrauding persons of their money and tangible personal property, *see McNally v. United States,* 483 U.S. 350, 358 n. 8, 107 S.Ct. 2875, 2887 n. 8, 97 L.Ed.2d 292 (1987), to such intangibles as their services for hire. Thus, the Court would hold that Goodyear is entitled to summary judgment under the Maryland Workers' Compensation Law as well as under the causation discussion set forth above.

For the stated reasons, an Order will be entered separately that grants the defendant's motion for summary judgment, with costs.