James R. ALDRIDGE, Sr., et al., Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER COMPANY, Defendant.

Civil No. H–90–140.

United States District Court, D. Maryland.

Jan. 28, 1999.

G. Macy Nelson, Towson, Maryland and Sylvan H.Sack, Baltimore, MD, for plaintiffs.

James K. Archibald, Joseph C. Wich, Jr., Geoffrey R. Garinther and Venable, Baetjer and Howard, Baltimore, MD, for defendants.

ALEXANDER HARVEY, II, Senior District Judge.

In this consolidated case, this Court has once again been called upon to address the viability of claims asserted against the Goodyear Tire & Rubber Company ("Goodyear") by former employees or survivors of employees of Kelly–Springfield Tire Company ("Kelly–Springfield").[1] Like other plaintiffs in earlier suits filed against Goodyear in this Court, the plaintiffs in these sixty-six consolidated cases [2] have alleged that they are entitled to compensation from Goodyear under various tort theories for occupational diseases contracted by them during the course of their employment with Kelly–Springfield.

In his Memorandum Opinion filed in this case on March 5, 1997, Judge Smalkin granted summary judgment in favor of the defendant against all plaintiffs in all cases. In that Opinion, he ruled that the exclusive remedy provided by the Maryland workers' compensation law extended to Goodyear as the corporate parent of Kelly–Springfield. The plaintiffs appealed Judge Smalkin's summary judgment Order, and in *Aldridge v. Goodyear Tire & Rubber Co.*, 145 F.3d 1323 (Table), 1998 WL 230986 (4th Cir. May 11, 1998), the Fourth Circuit vacated the judgment entered and remanded the case to this Court for further proceedings in light of *Great Atlantic & Pacific Tea Co. v. Imbraguglio*, 346 Md. 573, 697 A.2d 885 (1997).

In the motion for summary judgment which Goodyear had filed in this consolidated case,[3] Goodyear also argued that it is entitled to summary judgment because plaintiffs had failed to prove causation. That argument was based on prior rulings of this Court and the Fourth Circuit in similar cases brought by employees of Kelly–Springfield. In his Memorandum Opinion of March 5, 1997, Judge Smalkin did not address the causation issue. Following the Fourth Circuit's remand of the case, counsel for Goodyear advised the Court that it no longer wished to press its contention that Goodyear was immune from liability to the plaintiffs under the Maryland workers' compensation law. However, defendant Goodyear indicated that it now wished to press the causation arguments which had been earlier advanced in support of its motion for summary judgment but which had not been addressed by Judge Smalkin in his Memorandum Opinion of March 5, 1997. At a conference held with counsel, a schedule for further briefing of defendant's motion for summary judgment and a date for argument were set.[4]

The Court has now had an opportunity to consider the lengthy memoranda and voluminous exhibits submitted by the parties in support of and in opposition to defendant's pending motion for summary judgment. A massive record has been presented to the Court, and lengthy oral argument has been heard. For the reasons to be stated herein, the Court has concluded that the motion for summary judgment of defendant Goodyear

---

1. Although Kelly–Springfield is a wholly owned subsidiary of Goodyear, the two corporations are separate and distinct entities.

2. These sixty-six cases were filed between 1990 and 1995. They were consolidated by this Court's Order of April 3, 1997.

3. The Goodyear motion which is presently before the Court was filed on December 13, 1996.

4. Following remand of this consolidated case by the Fourth Circuit, it has been reassigned to the undersigned.

must be granted, and that judgment in favor of defendant Goodyear must be entered in all sixty-six pending cases.

## I

### Background Facts

Kelly–Springfield formerly operated a tire manufacturing plant in Cumberland, Maryland. Goodyear supplied some of the chemicals used by Kelly–Springfield in its manufacturing operations. Plaintiffs or their decedents are former employees of Kelly–Springfield who worked at the Cumberland plant at various times between 1940 and 1987. The plant closed in 1987. Plaintiffs allege that they or their decedents developed various diseases as a result of their contact with toxic chemicals to which they were exposed during the manufacturing process at Kelly–Springfield.

The plaintiffs here are the fourth group of employees who have sought damages from Goodyear based on similar tort claims. The first group of Kelly employees filed an action against Goodyear in this Court in 1980. *Heinrich v. Goodyear Tire & Rubber Company*, 532 F.Supp. 1348 (D.Md.1982). A second group sued Goodyear in 1987, *McClelland v. Goodyear Tire and Rubber Company*, 735 F.Supp. 172 (D.Md.1990), and a third group sued in 1989. *Jewell v. Goodyear Tire & Rubber Co.*, Civil No. S–89–3235. Finally, commencing in 1990, plaintiffs comprising this fourth group filed the first of these sixty-six pending cases, alleging claims similar to those asserted in the earlier cases. Although there were settlements in the first group of these cases, summary judgment in favor of Goodyear has previously been entered in all of the cases comprising the second and third group.

## II

### Prior Related Proceedings

In *Heinrich v. Goodyear Tire & Rubber Company*, 532 F.Supp. 1348 (D.Md.1982), an employee of Kelly–Springfield and his spouse sought damages in connection with the occupational disease contracted by him while working at Kelly–Springfield's Cumberland plant. Ruling on Goodyear's motion to dismiss, Judge Miller of this Court held that plaintiffs had properly stated claims against Goodyear sounding in negligence and fraud. After the parties engaged in extensive discovery, settlement was reached as to all claims in this first group of cases.

The next group of cases were consolidated and were addressed by Judge Smalkin in *McClelland v. Goodyear Tire & Rubber Co.*, 735 F.Supp. 172 (D.Md.1990) (*McClelland I*). Defendant Goodyear moved for summary judgment in those consolidated cases on the ground that plaintiffs could not prove causation by a preponderance of the evidence. The cases were referred to Magistrate Judge Chasanow of this Court who held several hearings and rendered a Report and Recommendation. The Magistrate Judge recommended that summary judgment should be entered in favor of Goodyear as to plaintiffs' strict liability and breach of warranty claims, but that summary judgment should be denied as to plaintiffs' negligence and fraud claims. *Id.* at 173. Addressing the parties' objections to the recommendations of the Magistrate Judge, Judge Smalkin concluded that Goodyear's motion for summary judgment should be granted as to all of plaintiffs' claims. *Id.* at 174.

The Magistrate Judge had concluded that insofar as the product liability based claims were concerned, the plaintiffs' evidence was insufficient to create a jury question. She determined that the plaintiffs could not show by a preponderance of the evidence that "any particular, identifiable Goodyear supplied chemical was the legal cause of their injuries." *Id.* In his Memorandum Opinion of April 25, 1990, Judge Smalkin agreed. After reviewing the record *de novo,* he said the following:

> Plaintiffs' attempts to hold Goodyear responsible, under product liability theories, for the total "toxic soup" they claim existed in their workplace, without the ability to adduce competent evidence that a reasonable fact-finder could view as showing a greater than 50% chance of a causal connection between any such product and the specific injuries they allegedly suffered, must fail. Maryland has not adopted the

"market-share" theory of product liability, of which the plaintiffs here asserted a microcosmic variant. Thus, the Court concludes that the plaintiffs must suffer summary judgment on their product liability claims.

735 F.Supp. at 174.

The Magistrate Judge further concluded, however, that there was a genuine dispute of material fact as to plaintiffs' negligence and fraud claims. Judge Smalkin disagreed for the following reasons:

> The Court is of the opinion that plaintiffs have not adduced evidence that would allow a reasonable fact-finder to conclude that it was more likely than not that any particular, identifiable negligent or intentional conduct by Goodyear (and not by K–S) was the cause of any of the plaintiffs' particular illnesses. *See e.g., Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 781 (E.D.N.Y.1984). Because, even taking the inferences to be drawn from the plaintiffs' experts testimony in the light most favorable to plaintiffs, as the Court must do on summary judgment, it would be impossible for them to show by a preponderance that any particularly, identifiable conduct by Goodyear was in any sense the proximate cause of their particular illnesses, *see Owens by Owens v. Bourns, Inc.,* 766 F.2d 145, 150 (4th Cir. 1985), defendant is entitled to summary judgment on the negligence and fraud claims. To hold otherwise would be, again, to adopt a microcosmic variant of the "market share" approach, albeit under more traditional tort theories than product liability theories. It would impose liability on too slender a reed to be tolerated under Maryland law, one not rising above the level of *post hoc, ergo propter hoc.* Blame, in the legal sense, cannot be so easily assigned, even where unfortunate consequences ensue.

*Id.* at 174–75.

Judge Smalkin then went on to consider in his Opinion a question which had been supplementally briefed by the parties, *viz.,* whether the exclusive remedy provided by Maryland's workers' compensation law extended to Goodyear as the corporate parent of Kelly–Springfield. *Id.* at 175. Judge Smalkin conceded that, since an independent ground existed in the case for the entry of summary judgment in favor of Goodyear, it was "unnecessary to the Court's decision" to answer this question. *Id.* Nevertheless, he stated that "the Court would, if the question were presented to it (*i.e.,* assuming that proximate causation could be proved on the negligence and fraud theories), answer in the affirmative." *Id.* This dictum was based on the Court's analysis of decisions in Maryland and other states recognizing that a parent company can be an employer of persons working for a subsidiary and can be entitled to the exclusivity protection of the workers' compensation laws. *Id.*

Twelve consolidated cases were involved in *McClelland I.* Thereafter, defendant Goodyear moved for summary judgment in five similar cases. In his Memorandum of May 9, 1990 entered in *Jewell v. Goodyear Tire & Rubber Co.,* Civil No. S–89–3235, Judge Smalkin granted summary judgment in favor of defendant Goodyear in those five cases as well, relying on the reasons set forth in his *McClelland I* ruling.

Plaintiffs in both *McClelland I* and *Jewell* appealed to the Fourth Circuit. In its unpublished *per curiam* opinion of March 25, 1991, the Fourth Circuit affirmed the entry of summary judgment in favor of defendant Goodyear in all of the *McClelland* and *Jewell* cases. *McClelland v. Goodyear Tire & Rubber Co.,* Nos. 90–3087, 90–3090, 90–3091, 90–3092, 90–3093 and 90–3094, 929 F.2d 693 (Table), 1991 WL 38700 (4th Cir. March 25, 1991) (*McClelland II*). Addressing plaintiffs' strict liability and breach of warranty claims, the Fourth Circuit said the following:

> In the end, even giving full consideration to the plaintiffs' deposition testimony of experts, causation (evidence of particular practices causing the plaintiffs' injuries) has not been established sufficiently to withstand summary judgment, carrying the day for Goodyear. The plaintiffs failed to produce adequate evidence that the injuries to them resulted from Goodyear's activities rather than other causes. The torts asserted coalesce into furnishing various toxic-making chemicals to Kelly–

Springfield without adequate concern for the health of Kelly–Springfield workers. The absence of a preponderance of the evidence (or, indeed, of any evidence) that any particular, identifiable chemical supplied by Goodyear was the legal cause of the plaintiffs' injuries was the basis on which strict liability and breach of warranty claims were struck. The magistrate judge so recommended, the district court, after *de novo* review of the record, agreed, and we affirm.

1991 WL 38700 at *2–3.

Addressing plaintiffs' negligence and fraud claims, the Fourth Circuit went on to say:

Turning to the claims of negligence and fraud, the district judge concluded, and, upon investigation of the record, we concur that a more likely than not finding that any particular, identifiable negligent or fraudulent conduct by Goodyear was the cause of the illnesses complained of could not be made. It was not the negligence or fraud which was in question, but the causation proceeding therefrom. *Peterson v. Underwood*, 258 Md. 9, 16–17, 264 A.2d 851, 854 (1970) ("We think plaintiff's proof was clearly sufficient to allow the jury to find that Norman negligently constructed and Christine failed to inspect the wall, and that Johnny's death was the result of the collapse of that wall. What we find to be a fatal defect in appellant Underwood's case is lack of any evidence causally linking defendants' negligence to the injury suffered.") Carcinogenic promoter and pulmonary irritant exposure characteristics of the toxic soup did not equate to causation of things done or undone or individual substances supplied by Goodyear.

1991 WL 38700 at *3.

Based on its determinations as to lack of proof of causation, the Fourth Circuit found it unnecessary to decide the case (and specifically abstained from so doing) on the alterna-

tive ground suggested by Judge Smalkin, namely that the workers' compensation exclusive remedy barred the action against Goodyear as Kelly–Springfield's wholly owning parent. *Id.* The Fourth Circuit determined that it was not necessary for Goodyear to establish whether there was statutory employer status or not since it "would win in either event." *Id.*

When Goodyear's motion for summary judgment later came before him in 1997 in this pending consolidated case,[5] Judge Smalkin chose to apply the alternative theory discussed by him in *McClelland I*. He accordingly held that the exclusivity bar of Maryland's worker's compensation law compelled the granting of summary judgment in favor of defendant Goodyear in all these consolidated cases. Memorandum Opinion of March 5, 1997, slip op. at 5–6. Summary judgment in all cases was accordingly entered in favor of defendant Goodyear.

Plaintiffs appealed to the Fourth Circuit. Shortly after the appeal was filed, the Court of Appeals of Maryland determined that Judge Smalkin's *dicta* in *McClelland I* was "suspect." *See Imbraguglio*, 346 Md. at 594, 697 A.2d 885. Counsel for Goodyear thereupon conceded in its brief on appeal that the order awarding it summary judgment should be reconsidered by this Court in light of *Imbraguglio*. *Aldridge*, 1998 WL 230986 at *2. Accordingly, the judgments were vacated and the case was remanded to this Court. *Id.* at *2–3.

### III

*Summary Judgment Principles*

It is well established that a party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984).

5. Resolution of these consolidated cases was delayed when, at an early stage of this litigation, counsel for the plaintiffs suggested that these were essentially asbestos cases. They were accordingly transferred to the Eastern District of Pennsylvania for handling by Judge Weiner as part of his MDL 875 docket. Later, however, counsel for plaintiffs indicated that these were not traditional or strictly asbestos cases but were rather "regular product liability—negligence occupational disease litigation, involving multiple diseases and multiple chemicals/substances." Based on that representation, the cases were then remanded by Judge Weiner to this Court for further proceedings.

Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses from proceeding to trial'." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that the motion for summary judgment of defendant Goodyear must be granted and that judgment in favor of defendant Goodyear must be entered in each of these consolidated cases.

## IV

### *The Claims and Defenses*

The complaints and amended complaints in these consolidated cases seek recoveries from defendant Goodyear based on the following theories: (1) strict liability; (2) breach of warranty; (3) negligence; and (4) fraudulent concealment. Plaintiffs contend that Goodyear manufactured and sold to Kelly–Springfield specific toxic chemicals, that each worker plaintiff was exposed to these toxic substances and that such exposure caused or contributed to a certain disease contracted by the worker.[6] Plaintiffs further assert that Goodyear undertook an obligation to ensure general plant safety at Kelly–Springfield and claim that Goodyear is also responsible in tort for the harm caused by toxic substances which Goodyear did not supply.

---

6. In the *McClelland* and *Jewell* cases and in this case, the plaintiffs have alleged that they contracted the same types of diseases. More than fifty different illnesses are claimed to have been caused by Goodyear's wrongful conduct. Cancer, cardiovascular disease and lung disease are the predominate illnesses alleged.

The principal contention advanced by Goodyear in support of its motion for summary judgment is that, as in prior similar cases brought by other Kelly–Springfield workers, the plaintiffs here have failed to produce evidence upon which a reasonable juror could rely to conclude that Goodyear-supplied chemicals or those supplied by another entity in fact caused their various ailments. Relying on the rulings made by Judge Smalkin in *McClelland I* and by the Fourth Circuit in *McClelland II*, defendant argues that the principles of law applied by this Court and by the Fourth Circuit[7] to similar facts bar any recovery by plaintiffs in the pending cases.

Faced with the clear applicability of this Court's and the Fourth Circuit's rulings in the *McClelland* cases, plaintiffs have presented to the Court a massive record.[8] Mindful of the determinations in *McClelland I* and *McClelland II* that the plaintiffs in that litigation had failed to provide any evidence linking a particular, identifiable chemical to their diseases, the plaintiffs have here submitted voluminous affidavits, exhibits and other evidentiary materials which were not a part of the record in *McClelland* or *Jewell*. They present this additional evidence largely in the form of supplemental affidavits which attempt to link the plaintiffs' diseases to specific chemicals supplied by Goodyear to Kelly–Springfield. Plaintiffs argue at length that sufficient evidence has now been produced by them to create a dispute of material fact in each case as to the causation issue. However, in spite of the prodigious volume of plaintiffs' submissions, they still have not on this record been able to satisfy their burden of proving causation under any of the four tort theories advanced. Plaintiffs' claims are ripe for adverse summary judgment determinations because they are "based upon [theories] without proof." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 423 (4th Cir.1996). Since no disputed issue of material fact as to the question of causation is presented by the record here, summary judgment in favor of defendant Goodyear will be entered in all of these pending cases.

V

*Goodyear–Supplied Chemicals*

◼ Proof of proximate causation has always been a significant hurdle faced by a plaintiff seeking a recovery in tort for an occupational disease. Plaintiffs' decision to seek tort recoveries from Goodyear, which was not their employer, must face "the availability to Goodyear ... of defenses, primarily absence of causality...." *McClelland II*, 1991 WL 38700 at *1. Because of problems faced by a claimant in overcoming a defense based on lack of causation, workers' compensation laws, which do not require proof of causation, have in Maryland and other states been extended to cover occupational diseases. Md.Ann.Code Art. 101, § 15 (1990). Indeed, the plaintiffs in this case have filed workers' compensation claims against Kelly–Springfield, and these claims have been stayed pending the outcome of this litigation. But, in here seeking under various tort theories much larger recoveries for their occupational diseases from an entity which was not their employer, plaintiffs face what the Court in *McClelland II* characterized as one of the "landmines" presented by Goodyear's causation defense "which would have to be overcome to make out a viable claim in tort." 1991 WL 38700 at *2.

As disclosed by the record here, workers at the Kelly–Springfield plant were exposed to a great many chemicals. However, Goodyear supplied only ten percent of the plaintiffs' list of approximately two hundred potentially hazardous chemicals to which they were exposed. Affidavits of plaintiffs' own experts reveal the extreme difficulties faced by plaintiffs in their effort to defeat summary judgment in this case.

---

7. Since the Fourth Circuit's unpublished disposition in *McClelland II* of the same issues that arise here has significant precedential value and since no published opinion would serve as well, Goodyear has properly cited and relied on the *McClelland II* opinion. *See* Fourth Circuit Local Rule 36(c).

8. Plaintiffs' opposition brief is 299 pages in length. In addition, separate oppositions have been filed in many of the pending 66 cases.

For example, according to Dr. Michael M. Lipsky, Jr., plaintiffs' principal expert witness,[9] as many as twenty-eight different chemicals at the Kelly–Springfield plant have the capacity to be a substantial contributing cause of cancer if sufficient exposure to each of the chemicals has occurred.[10] However, only three of these are Goodyear-supplied chemicals, namely N–Nitrosodimethylamine ("NDMA"), Nitrosomorpholine ("NMOR") and 4–amino–biphenyl ("4AB"). But even these three cannot be attributed exclusively to Goodyear. According to Dr. Donohue, another one of plaintiffs' experts, many of the Goodyear-supplied chemicals are not toxic until they decompose in the various hot processes of the tire plant. The toxic elements of the chemicals are often the byproduct of the interaction between many different chemicals, the vast majority of which were not supplied by Goodyear.

In his deposition in the *Heinrich* case, Dr. Lipsky was asked to explain his testimony that at any level of exposure the chemicals listed in his affidavits substantially increased the risk of causing cancer. When asked what he meant by the phrase "substantially," he stated that he could not give a quantitative assessment for the term, namely a number or percent. He explained that he was merely saying that the risk was greater with the exposure than it would have been without the exposure. This testimony hardly constitutes competent evidence which "a reasonable fact-finder could view as showing a greater than 50% chance of a causal connection" between a Goodyear product and the specific illnesses alleged by plaintiffs. *McClelland I,* 735 F.Supp. at 174.

Defendant notes that the deposition testimony of Dr. Lipsky in *Heinrich* is inconsistent with statements contained in his affidavits filed in this case. In contrast to the opinions proffered here, Dr. Lipsky testified in the *Heinrich* case that he could not say that any of the particular chemicals listed in his affidavits contributed to the cancer of any specific plaintiff. He also stated that he was not qualified to testify as to the concentration of any individual chemical necessary to cause harm and that he was not expressing any opinion as to whether the exposure of any plaintiff to any particular chemical was sufficient to be a substantial contributing factor to the individual's disease. It appears that Dr. Lipsky has now re-fashioned his opinions to meet the deficiencies in plaintiffs' proof described in *McClelland I* and *McClelland II.* This Court would note that the Fourth Circuit has held that a district court is justified in disregarding the affidavit of an expert when it conflicts with that expert's earlier deposition testimony. *Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 976 (4th Cir.1990).

In any event, it is apparent from the Court's review of all of the affidavits submitted by plaintiffs that their experts have not been able to isolate the toxic effects of the Goodyear-supplied chemicals from the effects of the host of other chemicals not supplied by Goodyear. Many chemicals at the Kelly–Springfield plant which are toxic in and of themselves were not supplied by Goodyear. In one of his affidavits, Dr. Lipsky confirmed that many chemicals, most of which were not supplied by Goodyear, are potential contributing causes of one or more of the diseases claimed by plaintiffs. Dr. Donohue's affidavits acknowledge that, while the carcinogens NDMA, NMOR and 4AB can in theory be derived exclusively from Goodyear-supplied chemicals, the NDMA, NMOR and 4AB present at the Kelly–Springfield plant were necessarily derived from a few chemicals supplied by Goodyear, from many chemicals not supplied by Goodyear, and from the countless interactions between all these chemicals which occurred during the hot processing of rubber at the plant. Plaintiffs' own evidence thus indicates that Goodyear at most supplied only a small fraction of the

---

**9.** Affidavits of Dr. Lipsky were a part of the record in the *McClelland* and *Jewell* litigations. Both Judge Smalkin and the Fourth Circuit determined that these and other affidavits submitted by plaintiffs did not constitute sufficient evidence to defeat the motion for summary judgment filed by Goodyear in those cases.

**10.** Dr. Marc D. Donohue has similarly stated that numerous chemicals at the plant have the capacity to be a substantial contributing cause of heart disease.

total chemicals at Kelly–Springfield which may have caused or contributed to their various illnesses.

■ As indicated by the *McClelland* litigation, plaintiffs in this case must produce evidence that a "particular, identifiable chemical supplied by Goodyear" was a legal cause of their injuries.[11] *McClelland I*, 735 F.Supp. at 174; *McClelland II*, 1991 WL 38700 at *3. This they have failed to do. It is not possible to determine from facts of record whether any Goodyear-supplied chemical in fact caused plaintiffs' illnesses. That the presence of a particular chemical may have increased the risk of harm hardly constitutes causation in fact. In view of the presence at the Kelly–Springfield plant of a host of different chemicals interacting with each other, some supplied by Goodyear and some not, and in view of the complicating effects of other potential contributing factors to plaintiffs' cancer and heart disease such as genetics, overall health considerations, diet and smoking habits, a reasonable fact-finder would not be able to conclude that any one of the identifiable chemicals supplied by Goodyear caused plaintiffs' illnesses. Cancer and cardiovascular disease are common illnesses suffered by a significant proportion of the general population. As the Fourth Circuit stated in *McClelland II*, the plaintiffs have "failed to produce adequate evidence that the injuries to them resulted from Goodyear's activities *rather than other causes.*" 1991 WL 38700 at *2. (Emphasis added).

Plaintiffs argue that this is a different case from *McClelland I*. Certainly, since different plaintiffs are involved here, the *McClelland* rulings have no *res judicata* or collateral estoppel effect in this case. However, this case and the *McClelland* and *Jewell* litigations have sufficient commonality that the principles enunciated there by Judge Smalkin and by the Fourth Circuit in its affirmance of Judge Smalkin's rulings are controlling here. The material facts here and in *McClelland* are virtually identical. The same claims have been asserted, and recoveries are being sought here for the same types of diseases. The tire workers in this case worked in the same locations, in the same plant and during the same time periods as did those in both *McClelland* and *Jewell.* Moreover, the same toxic chemicals are at issue here, and plaintiffs have alleged that they were exposed to those chemicals in the same manner as were the plaintiffs in the *McClelland* and *Jewell* litigations.

In their attempt to avoid the decisive application of the *McClelland* rulings, plaintiffs argue that there has been a change or clarification of Maryland law since the Fourth Circuit decided *McClelland II*. Relying on *Eagle–Picher Industries, Inc. v. Balbos*, 326 Md. 179, 604 A.2d 445 (1992), and *Shetterly v. Raymark Industries, Inc.*, 117 F.3d 776 (4th Cir.1997), plaintiffs argue that Maryland has now replaced in a case of this sort the "but-for" causation standard with a "substantial factor" test.[12] However, there has been no recent change in the Maryland law of causation. In *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986), the Fourth Circuit recognized that in a case involving the alleged liability of a number of different defendants, the plaintiff was required under Maryland law to prove that the conduct of each particular defendant was "a substantial factor" in bringing about the result. *Id.* at 1162 (citing *Robin Express Transfer, Inc. v. Canton R.R.*, 26 Md.App. 321, 335, 338 A.2d 335 (1975)).[13]

---

11. Plaintiffs erroneously argue that defendant Goodyear has the burden under Rule 56(c) of providing evidence to show the absence of a genuine issue of material fact. But Rule 56 does not require that Goodyear support its motion with affidavits or other similar materials negating plaintiffs' claims. *Catrett*, 477 U.S. at 323, 106 S.Ct. 2548. Once a motion for summary judgment has been properly filed by a defendant, the plaintiffs have the burden of establishing every essential element of their case, and, if they fail as to any one element, the plain language of Rule 56(c) "mandates the entry of summary judgment." *Id.*

12. Plaintiffs also cite *Owens–Corning Fiberglas Corporation v. Garrett*, 343 Md. 500, 682 A.2d 1143 (1996) and *ACandS, Inc. v. Asner*, 344 Md. 155, 686 A.2d 250 (1996), which are similar asbestos cases.

13. As did the Court of Appeals of Maryland in *Balbos*, the Fourth Circuit in *Lohrmann* found applicable the standard set forth in *Restatement (Second) of Torts* § 431. *See* 782 F.2d at 1162.

■ As plaintiffs have correctly stated, the substantial factor test for causation rather than a "but-for" test should under Maryland law be applied in a case involving multiple causes of a particular harm. However, plaintiffs miscomprehend the underlying requirements for the application of the substantial factor test in a case like this one. The critical question here is whether Goodyear's chemicals or conduct were independently *sufficient* causes of harm to the plaintiffs. A cause must be sufficient before it can be substantial. *See Restatement (Second) of Torts*, § 432(2) ("if . . . each [force] of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial contributing factor"). The *Balbos* case itself recognizes that this sufficiency requirement must first be met in a case involving multiple causes of a particular harm. As the Court of Appeals of Maryland there observed, " '[i]f two causes concur to bring about an event, *and either one of them, operating alone, would have been sufficient to cause the identical result,*' some test of proximate causation, other than 'but-for' is needed." 326 Md. at 208, 604 A.2d 445 (quoting W. Keeton, *Prosser & Keeton on the Law of Torts* § 41 at 266 (5th ed.1984) (emphasis added).)

*Balbos* and the other cases relied upon by plaintiffs were asbestos cases. Asbestos is known to cause asbestosis and mesothelioma, and that this product is a sufficient cause of harm is rarely a contested issue in asbestos litigation. Thus, since asbestos in itself is sufficient to cause harm, the substantial factor test has been properly applied in *Balbos*

and other Maryland asbestos cases to determine whether there has been adequate proof of causation. Here, each chemical supplied by Goodyear must be an independently sufficient cause of harm before it can be a substantial contributing factor.[14] As discussed hereinabove, the proof relied upon by plaintiffs does not show by a preponderance of the evidence that any particular, identifiable Goodyear-supplied chemical was of itself sufficient to cause harm to the plaintiffs.

At the conference held with counsel following remand of this case by the Fourth Circuit, the Court denied plaintiffs' request that they be permitted to undertake additional discovery. Plaintiffs argue that, pursuant to Rule 56(e), they should have been permitted to conduct further discovery before responding to the pending motion for summary judgment. The Court must disagree.

The original *Heinrich* cases were extensively litigated between 1980 and 1986. A large amount of discovery was undertaken in those cases, all of which is now and has been available to plaintiffs and their attorneys.[15] In the *Heinrich* litigation, voluminous documents were produced both by Goodyear and by Kelly–Springfield, and the depositions of 28 management and other personnel of Goodyear were taken by counsel for plaintiffs. The Court would note in particular that the plaintiffs in *Heinrich* took the deposition of Michael W. Smith, who was Goodyear's Environmental Coordinator of Governmental Environment, Safety and Health Insurance Programs. Smith's deposition testimony and the affidavit he later filed in *McClelland* contain detailed information concerning chemicals

---

14. Professor David W. Robertson has cogently noted in *The Common Sense of Cause–in–Fact,* 75 Tex.L.Rev. 1765, 1778–80 (1997) that courts often err in applying the substantial factor test in a case involving multiple causes of a particular harm. As he observed:

The only "combined active conduct" cases in which the substantial factor test is needed are those in which the defendant's conduct was by itself sufficient to accomplish the harm but did not seem to be a but-for cause of the harm because it was fortuitously joined by the causal conduct of another that was also by itself insufficient to accomplish the harm.

\* \* \* \* \* \*

The real trouble begins when courts go a step further and start treating the relatively

vague substantial factor vocabulary as an improvement upon the but-for test with respect to any multiple causation case in which analysis appears difficult. As we have seen, the only multiple causation cases that are legitimately solved by the substantial factor test are the "combined force" situations in which we are morally certain that the but-for test stubbornly persists in yielding the wrong answer. When courts begin turning to the substantial factor vocabulary in a broader range of cases, valuable precision of analysis is lost and nothing is gained.

15. Sylvan H. Sack, Esq., one of plaintiffs' attorneys in this case, was also co-counsel for plaintiffs both in the *Heinrich* and in the *Jewell* cases.

supplied by Goodyear to Kelly–Springfield and those supplied by other companies. Eleven representatives of Kelly–Springfield were also deposed. The Kelly–Springfield plant closed in 1987, and there is little new information of any consequence which could be revealed by way of additional discovery.

Discovery undertaken in the *McClelland* litigation is also available to plaintiffs.[16] In his letter of January 14, 1988 to Judge Smalkin, counsel for the plaintiffs in the *McClelland* litigation noted that discovery had been virtually completed "four years ago" and objected to the convening of a conference "for the purpose of scheduling dilatory, expensive and wholly unnecessary, redundant protracted discovery on limited issues." At the hearing held in the *McClelland* litigation before Magistrate Judge Chasanow on January 12, 1990, counsel for plaintiffs relied on evidence provided by "experts who have testified . . . at deposition and have also expressed opinions incorporated in answers to interrogatories that those chemicals . . . are sufficient to be substantial contributing causes of the disease." (Tr. of hearing, p. 68–69.) In her Report and Recommendation of January 31, 1990, Magistrate Judge Chasanow stated: "For some time now, the parties have been focusing on the issue of causation, first with regard to discovery and now on summary judgment." As the Fourth Circuit noted in *McClelland II*, discovery limited to the issue of causation had been requested in that case, and Goodyear had moved for summary judgment "following discovery." 1991 WL 38700 at *1.

Moreover, the critical causation issue is not one as to which new relevant information could be expected to be obtained from defendant Goodyear. In opposing defendant's motion for summary judgment, plaintiffs have relied principally on information within their exclusive possession and control, namely the affidavits of their experts and the exhibits filed in support of the experts' opinions. Additional discovery could not reasonably be expected to add relevant and material evidence to the facts of record here. In view of the extensive discovery previously undertaken in *Heinrich* and *McClelland*, all of which has been available to plaintiffs, this Court is satisfied that it properly denied plaintiffs' request that they be permitted to engage in further discovery following remand of this case by the Fourth Circuit.

For all these reasons, this Court concludes that defendant Goodyear is entitled to the entry of summary judgment as to all of plaintiffs' claims based on their exposure to chemicals supplied by Goodyear to Kelly–Springfield.[17]

## VI

### *Chemicals Supplied by Others*

■ In their complaints and amended complaints, plaintiffs also seek recoveries from Goodyear under negligence and fraud theories for occupational diseases which were allegedly caused by chemicals which Goodyear did not supply. Relying principally on § 324A of the *Restatement (Second) of Torts*,[18] plaintiffs contend that Goodyear undertook to advise Kelly–Springfield concerning health and safety procedures and to provide Kelly–Springfield with handling precautions for chemicals which were not sup-

**16.** In the opposition to Goodyear's motion for summary judgment which they earlier filed in this case on February 3, 1997, plaintiffs conceded that "the *McClelland* plaintiffs and Goodyear conducted extensive discovery on the sufficiency of the opinions of plaintiffs' experts pertaining to causation of diseases." (Plaintiffs' Opposition at 4).

**17.** Plaintiffs have asserted strict liability claims under both § 402A and § 402B, *Restatement (Second) of Torts*. Both of these claims must fail because of the lack of proof that an identifiable chemical supplied by Goodyear was the legal cause of the plaintiffs' illnesses.

**18.** Section 324A provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

 (a) his failure to exercise reasonable care increases the risk of such harm, or

 (b) he had undertaken to perform a duty owed by the other to the third person, or

 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

plied by Goodyear. According to plaintiffs, Goodyear is liable to Kelly–Springfield workers for failing to exercise reasonable care in performing the duties it had assumed and also because the workers suffered harm when they relied to their detriment on Goodyear's actions.

Plaintiffs are faced with the same insurmountable hurdles when seeking recoveries for harm caused by chemicals not supplied by Goodyear as they faced when seeking recoveries for Goodyear-supplied chemicals. Once again, they have failed to produce evidence that a particular, identifiable chemical was a legal cause of their illnesses. For the reasons stated hereinabove, it cannot be determined from facts of record whether any identifiable chemical, whether or not supplied by Goodyear, in fact caused plaintiffs' many illnesses. Since there is insufficient proof that plaintiffs' illnesses were caused by the dangerous properties of *any* of the chemicals to which the workers were exposed, Goodyear had no duty to warn Kelly–Springfield about the use or presence of chemicals supplied by others, including asbestos products.[19] As the Fourth Circuit concluded in *McClelland II*, since a more likely than not finding could not be made "that any particular, identifiable negligent or fraudulent conduct by Goodyear was the cause of the illnesses complained of ... [i]t was not the negligence or fraud which was in question, but the causation proceeding therefrom." 1991 WL 38700 at *3. This conclusion applies with equal force to the facts of record in this case.

██ Plaintiffs would not in any event be entitled to recover damages from Goodyear under § 324A. Goodyear was not the guarantor of plant safety for Kelly–Springfield workers. In the contract which Goodyear entered into with Kelly–Springfield in 1953, Goodyear undertook to provide assistance and advice to Kelly–Springfield merely "with regard to research, development design and improvement in all fields pertaining to the rubber industry." Paragraph 6 of that contract specifically stated that the agreement "shall not be deemed to include any [Good-

year] services at the plants of [Kelly–Springfield]," although noting that Goodyear might render some additional services upon agreement of the parties. The record indicates that Goodyear from time to time gave advice to Kelly–Springfield on industrial hygiene matters. However, Goodyear was not, as claimed by plaintiffs, "hired" to act as the industrial hygiene expert for Kelly–Springfield's entire plant. There is no evidence of record indicating that Goodyear undertook, as an assumed duty to Kelly–Springfield, to provide the latter's workers with handling precautions or to warn them of risks encountered when they exposed themselves to various chemicals. If such a duty existed, it would be Kelly–Springfield's and Kelly–Springfield's alone. Worker safety at its plant was the responsibility of Kelly–Springfield, not that of Goodyear. To prevail under § 324A, plaintiffs must prove both the existence of a Goodyear undertaking to Kelly–Springfield and Goodyear's failure to exercise reasonable care in the performance of such an undertaking. No such proof exists in this record.

For all these reasons, defendant Goodyear is also entitled to summary judgment as to plaintiffs' claims based on their exposure to chemicals which were not supplied by Goodyear.

## VII

### *Admissibility of Expert Opinions*

As an alternative argument in support of its motion for summary judgment, Goodyear contends that the conclusory affidavits submitted by plaintiffs are not admissible because the opinions rendered by plaintiffs' experts do not satisfy the requirements of Rule 702, F.R.E. and *Daubert v. Merrell–Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). According to Goodyear, the expert opinions relied upon by plaintiffs are too vague and conclusory to be received as admissible evidence in this case.

19. Goodyear did not manufacture asbestos nor supply rubber processing materials containing asbestos to Kelly–Springfield, and Goodyear played no part in the installation or maintenance of pipecovering asbestos materials in the Kelly–Springfield plant.

Only Dr. Lipsky and Dr. Caplan have opined that chemicals supplied by Goodyear were a substantial contributing factor to the illnesses contracted by the plaintiffs.[20] Their affidavits contain essentially the same boilerplate language:

It is my opinion with a reasonable degree of medical probability that each of the chemicals identified above was a substantial contributing cause of Mr. _____'s *(disease)*. I base this opinion on my training and experience, my own scientific research, and my knowledge of the scientific literature, as well as Mr. _____'s occupational history as provided to me by counsel for Mr. _____.

 *Daubert* requires that when considering the admissibility of an expert opinion under Rule 702, a federal judge must exercise a "gatekeeping responsibility" to insure that admitted scientific testimony is both relevant and reliable. 509 U.S. at 589, n. 7, 600, 113 S.Ct. 2786, 125 L.Ed.2d 469. Before the Court can consider expert opinions of the sort relied upon here by plaintiffs, threshold standards for the admissibility of such evidence must be met. As Judge Young noted in *Marder v. G.D. Searle & Co.,* 630 F.Supp. 1087, 1089 (D.Md.1986), *aff'd,* 814 F.2d 655 (4th Cir.1987) (Table), the Fourth Circuit has cautioned that special care should be taken when assessing the sufficiency of causation evidence in a case where such evidence is wholly circumstantial. In performing its "gatekeeping" task, a district judge must engage in a two-part analysis. *United States v. Dorsey,* 45 F.3d 809, 813 (4th Cir.), *cert. denied,* 515 U.S. 1168, 115 S.Ct. 2631, 132 L.Ed.2d 871 (1995). The Court must first make essentially a reliability inquiry and determine whether the proffered expert testimony consists of "scientific knowledge." *Id.* Particularly in establishing causation in product liability and toxic tort actions, expert opinion testimony must be grounded on reliable data. *Maddy v. Vulcan Materials,* 737 F.Supp. 1528, 1533 (D.Kan. 1990). Second, the Court must inquire further to ascertain whether the proposed testi-

mony is relevant, that is, whether under Rule 702 it will "assist the trier of fact." *Dorsey,* 45 F.3d at 813. In determining whether challenged expert evidence properly satisfies the reliability component of the test, the Supreme Court in *Daubert* held that a trial court may consider several factors: (1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; and (4) the degree of the method's or conclusion's acceptance within the relevant scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786; *Dorsey,* 45 F.3d at 813.

Applying in this case the principles of *Daubert* and subsequent decisions interpreting it, this Court concludes that the affidavits of Dr. Lipsky and Dr. Caplan submitted by plaintiffs must be excluded. Vague and conclusory terms like "substantial contributing cause" and "knowledge of the scientific literature" standing alone do little to satisfy the reliability requirement. As the Supreme Court recently stated, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997).

 To be properly admissible under Rule 702, expert testimony "requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chem. Co.,* 151 F.3d 269, 276 (5th Cir.1998); *see also Cavallo v. Star Enterprise,* 892 F.Supp. 756, 760–61 (E.D.Va.1995), *aff'd in part,* 100 F.3d 1150, 1159 (4th Cir. 1996). In a comment directly relevant to the circumstances of this case, the Court in *Cavallo* referred to evidence indicating that "all chemicals can cause health problems at some level" and noted that it is therefore critical that an expert testifying as to the effects of

---

**20.** Affidavits of the following five experts have been submitted by plaintiffs: Dr. Michael M. Lipsky, Jr., Dr. Marc D. Donohue, Dr. Raymond F. Caplan, Dr. Thomas Hobbins and Dr. Neil B. Jurinski.

exposure to chemicals identify the threshold level required to cause a particular effect. 892 F.Supp. at 764. In a toxic tort case, "the extrapolation or leap from one chemical to another must be reasonable and scientifically valid." *Moore*, 151 F.3d at 279 (citing *Daubert*, 43 F.3d at 1319–20 and *Cavallo*, 892 F.Supp. at 769).

 In their affidavits, neither Dr. Lipsky nor Dr. Caplan state (1) what training or experience they have relied upon in reaching conclusions that particular chemicals cause specific illnesses, (2) what scientific research they have conducted and what experience they have that renders them qualified to give their opinions, (3) what "scientific literature" supports their conclusions, and (4) what threshold level of exposure to a particular chemical is necessary to cause a particular disease. Most significantly, all of plaintiffs' experts have failed to adequately address possible alternative causes of plaintiffs' illnesses. Many of these illnesses, including cancer and cardiovascular disease, are commonly known to be influenced by a complex, and as yet poorly understood, interplay of genetic and environmental factors. Plaintiffs' experts have not explained how a particular chemical in fact caused a particular disease when each worker was exposed not only to a number of other chemicals at the Kelly–Springfield plant but also to various environmental factors with similar effects. As the Court noted in *Cavallo: "Daubert* commands that in court, science must do the speaking, not merely the scientist." 892 F.Supp. at 761; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315–16 (9th Cir.1995). The failure of an expert to address alternative causes has been held to constitute an adequate ground for excluding the testimony of that expert. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir.1994); *see also Reiff v. Convergent Technologies*, 957 F.Supp. 573, 583 (D.N.J.1997) (excluding expert testimony

where the expert ignored or was unable to satisfactorily discount alternative causes and did little if anything to rule them out) (quoting *Diaz v. Johnson Matthey, Inc.*, 893 F.Supp. 358, 360 (D.N.J.1995)).

In the performance of its gatekeeping responsibility, this Court concludes that, insofar as the causation issue in this case is concerned, the affidavits of Dr. Lipsky and Dr. Caplan do not satisfy the reliability component of the *Daubert* test. The evidence in question must therefore be excluded. As a result of such exclusion, there is insufficient evidence of causation in the record here to create a triable issue of fact for the jury. Plaintiffs' failure to satisfy the *Daubert* test provides an alternative ground for the Court's conclusion that defendant's motion for summary judgment must be granted.

## VIII

### *Conclusion*

For all the reasons stated, this Court has concluded that defendant's motion for summary judgment must be granted as to all claims of all plaintiffs asserted in these consolidated cases.[21] Judgment will therefore be entered in favor of defendant Goodyear in each of these sixty-six cases. An appropriate Order will be entered by the Court.

❖ ❖ ❖ ❖ ❖ ❖

**21.** Shortly before the scheduled hearing on defendant's motion for summary judgment, plaintiffs filed a motion to strike some of defendant's exhibits and a motion for clarification or reconsideration of the Court's earlier ruling on plaintiffs' previous motion to strike exhibits. These two motions lack merit, and both motions will be denied. Following its review of the documents in question, the Court is satisfied that all of the challenged exhibits are relevant and admissible and that they may properly be considered by the Court in ruling on defendant's motion for summary judgment.