James R. ALDRIDGE, et al., Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER COMPANY, Defendant.

No. CIV. H–90–140.

United States District Court,
D. Maryland.

Dec. 12, 2000.

---

G. Macy Nelson, Towson, Maryland for plaintiffs.

James K. Archibald, Joseph C. Wich, Jr. and Venable, Baetjer and Howard, Baltimore, Maryland for defendant.

ALEXANDER HARVEY, II, Senior District Judge.

In its Opinion of January 28, 1999, this Court granted the motion for summary judgment of defendant Goodyear Tire & Rubber Company ("Goodyear"). *Aldridge v. Goodyear Tire & Rubber Company,* 34 F.Supp.2d 1010 (D.Md.1999) (*Aldridge II*). Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit which remanded the case for further proceedings. *Aldridge v. Goodyear Tire & Rubber Co., Inc.,* 223 F.3d 263 (4th Cir.2000) (*Aldridge III*). In its Opinion, the Fourth Circuit did not address the substantive issues raised by plaintiffs in their appeal. Rather, the Fourth Circuit directed this Court to reconsider on remand whether the plaintiffs were entitled to limited discovery before responding to Goodyear's motion for summary judgment.

Following remand, this Court met with counsel and set a schedule for the filing of and the briefing of the question whether plaintiffs should have been permitted to engage in further discovery or whether this Court was justified in denying discovery altogether before plaintiffs responded to Goodyear's motion for summary judgment. *Aldridge III,* 223 F.3d at 266. G. Macy Nelson, Esq., the attorney for the plaintiffs who had represented them both in this Court and in plaintiffs' appeal to the Fourth Circuit, duly filed a "Motion for Leave to Conduct Further Discovery under Rule 26."[1] In support of his motion, Mr. Nelson submitted a memorandum of law and various exhibits. Counsel for defendant Goodyear filed an opposition to plaintiffs' motion, together with several affidavits and other exhibits. After this Court entered a Protective Order, defendant Goodyear submitted several thousand pages of documents which it contends support its position that adequate discovery had been provided to plaintiffs before they filed their opposition to Goodyear's motion for summary judgment. Mr. Nelson in turn has filed a reply to Goodyear's opposition. A hearing on plaintiffs' motion was held in open court on October 27, 2000. At that hearing, the Court requested counsel to file supplementary briefs which have now been received.

The Court has now had an opportunity to review the pleadings, memoranda and exhibits which have been filed by the parties following remand. In particular, the Court has carefully examined the documents which have been submitted by the parties and which relate to the question whether this Court was justified in previously denying plaintiffs the right to undertake further discovery before opposing defendant's motion for summary judgment.

For the reasons stated herein, plaintiffs' motion for leave to conduct further discovery will be denied.

I

*Background*

This consolidated case has had a long and tortuous history. In its prior Opinion, this

---

1. Following remand, Henry Eigles, Esq. entered his appearance for one of the plaintiffs and filed a separate motion for leave of court to conduct discovery. That motion was denied at the outset of the hearing held on October 27, 2000.

Court discussed in some detail the background facts and the prior related proceedings. *See Aldridge II,* 34 F.Supp.2d at 1013–15. That discussion will merely be summarized here. Suffice it to say, plaintiffs are the fourth group of employees of Kelly–Springfield Tire Company ("Kelly–Springfield") who have sought damages from Goodyear under various tort theories for occupational diseases contracted by them during the course of their employment with Kelly–Springfield. *See Heinrich v. Goodyear Tire & Rubber Company,* 532 F.Supp. 1348 (D.Md.1982); *McClelland v. Goodyear Tire & Rubber Company,* 735 F.Supp. 172 (D.Md. 1990) (*McClelland I* ); *Jewell v. Goodyear Tire & Rubber Co.,* Civil No. S–89–3235.

The *Heinrich* case was settled after the parties had engaged· in extensive discovery. In both *McClelland I* and *Jewell,* Goodyear's motions for summary judgment were granted on the ground that plaintiffs could not prove causation by a preponderance of ˋ the evidence. This Court's rulings in *McClelland I* and in *Jewell* were affirmed on appeal by the Fourth Circuit. *McClelland v. Goodyear Tire & Rubber Co.,* 929 F.2d 693 (Table), 1991 WL 38700 (4th Cir.1991) (*McClelland II* ). In *Aldridge II,* this Court granted Goodyear's motion for summary judgment on the ground that plaintiffs had failed to produce evidence that a "particular, identifiable chemical supplied by Goodyear" was the legal cause of their injuries. 34 F.Supp.2d at 1020; *McClelland I,* 735 F.Supp. at 174; *McClelland II,* 1991 WL 38700 at *3.

In opposing Goodyear's motion for summary judgment in this case, plaintiffs argued, *inter alia,* that pursuant to Rules 56(e) and 56(f), they should have been permitted to conduct further discovery before responding to Goodyear's motion. That request was denied by this Court on the ground that a very large amount of discovery had previously been undertaken in the *Heinrich* and *McClelland I* litigations, that all this discovery was available for counsel in this case and that there was little new information of any consequence which could be revealed by way of additional discovery. *Aldridge II,* 34 F.Supp.2d at 1020–21. In remanding this case, the Fourth Circuit directed this Court

to reconsider its denial of discovery to the plaintiffs. *Aldridge III,* 223 F.3d at 266.

In its remand Opinion, the Fourth Circuit stated that this Court should reconsider whether the plaintiffs "are entitled to limited discovery,..." *Id.* at 265. The Fourth Circuit determined that, on the record before it, it was unclear whether the documents heretofore produced in the "combined litigations" are "fully responsive to all of the individual requests by these plaintiffs." *Id.* at 266. Because of this uncertainty, the case was remanded with instructions that this Court provide the plaintiffs with "a limited opportunity for discovery" so that they might seek those documents and information "and only those documents and information" responsive to their requests that have not previously been disclosed in one or the other of the litigations. *Id.* In remanding, the Fourth Circuit stated that, "we do not intend to imply that the workers are entitled to duplicative discovery," but the Court anticipated "that any permitted discovery will be quite limited." The Court further stated (*Id.*):

Without attempting in any way to limit the district court's prerogative to supervise discovery, we would expect that the workers would be required to identify very specifically *that very small amount of information* that they believe might exist and that Goodyear would be required to respond only to *that limited discovery request.* (Emphasis added).

In instructing this Court to review the parties' submissions on remand and determine whether plaintiffs were entitled to further discovery, the Fourth Circuit indicated that it was not necessarily directing this Court to order defendant Goodyear to provide additional discovery to plaintiffs. The Court noted that it "may well be that the district court was fully justified in denying further discovery altogether." *Id.* at 266. Following its consideration of any "circumscribed discovery," this Court was directed to assess whether summary judgment is appropriate in this case so that the Fourth Circuit Court might be in a better position to review this Court's conclusion. *Id.* at 267.

## II

### *Evidentiary Materials Previously Before the Court*

To place the discovery dispute in this long pending case in proper perspective, the Court will, at the outset, summarize the evidentiary materials which were before it and which were considered by the Court when it denied plaintiffs' request that they be permitted to engage in further discovery. Defendant Goodyear filed its motion for summary judgment on December 13, 1996. In support of its motion, Goodyear had submitted voluminous exhibits, including documents, deposition excerpts and affidavits. All of these evidentiary materials were available to plaintiffs as a result of discovery undertaken in the *Heinrich* and *McClelland* cases.

On February 3, 1997, plaintiffs filed their opposition to Goodyear's motion for summary judgment, together with Exhibits Nos. 1 through 8 and so-called "Master Exhibits" Nos. 1 through 13. On February 19, 1997, plaintiffs filed "Master Exhibit File, Volume II," and on March 5, 1997, they filed "Master Exhibit File, Volume III." The numerous exhibits submitted by plaintiffs in Volumes I, II and III of its Master Exhibit Files included voluminous documents produced in the *Heinrich* and *McClelland* litigations. Included, *inter alia*, were an eleven page Chemical Toxology Report, a 163–page alphabetical listing of chemicals used by Kelly–Springfield, a 100–page summary of chemicals used in the Mill Room and an affidavit of Dr. Donohue discussing the properties of chemicals present in the Cumberland plant.[2]

In his Memorandum Opinion dated March 5, 1997, Judge Smalkin granted Goodyear's motion for summary judgment.[3] However, Judge Smalkin did not address the causation issue raised in Goodyear's motion but chose to apply the alternative theory previously discussed by him in *McClelland I. See* 735 F.Supp. at 175–76. He accordingly held that the exclusivity bar of Maryland's worker's compensation law compelled the granting of summary judgment in favor of defendant Goodyear in all of these consolidated cases. (Memorandum Opinion, slip op. at 5–6). Plaintiffs appealed to the Fourth Circuit which, following Goodyear's concession that the order awarding summary judgment in its favor should be reconsidered in light of a recent decision of the Maryland Court of Appeals, vacated the judgments entered and remanded this case to this Court. *Aldridge v. Goodyear Tire and Rubber Co.*, 145 F.3d 1323, 1998 WL 230986 (4th Cir. May 11, 1998) (*Aldridge I* ).

Following the *Aldridge I* remand, this case was reassigned to the undersigned judge. A conference with counsel was held on August 27, 1998. At that conference, plaintiffs' attorney requested leave to undertake further discovery and to file an additional brief in opposition to Goodyear's pending motion for summary judgment. The Court denied plaintiffs' request to undertake further discovery but permitted plaintiffs to file an additional brief and additional supporting exhibits in opposition to Goodyear's motion. Because of the many plaintiffs and the various issues raised by Goodyear's motion, plaintiffs were permitted to file an additional memorandum exceeding the 50–page limit established by Local Rule 105.3. Counsel for plaintiffs were advised at the conference held on August 27, 1998 that they were free to argue, both in their memorandum and at the hearing to be held on Goodyear's motion for summary judgment, that plaintiffs should be allowed to conduct further discovery before the Court ruled on Goodyear's motion. The Court indicated that, after plaintiffs had filed their supplementary materials, the Court would be in a better position to rule on their request that they be permitted to conduct further discovery.

Plaintiffs' supplemental opposition brief was some 299 pages in length. Together

---

**2.** In addition, fourteen separate oppositions of individual plaintiffs were filed in the separate *Aldridge* case and in some of the other related cases brought by these individual plaintiffs. Those materials were also a part of the summary judgment record before the undersigned when he denied plaintiffs' request to conduct further discovery.

**3.** Plaintiffs' cross-motion for summary judgment was denied in that Opinion.

with that opposition, plaintiff submitted one volume of reports of its experts, one volume of affidavits and medical histories and four additional volumes of exhibits. Thousands of pages of documents obtained during discovery in the *Heinrich* and *McClelland* cases, as well as during discovery in this case, were included. There were affidavits of plaintiffs and excerpts from the depositions of several plaintiffs taken in this case. There were chemical exposure summaries for various plaintiffs, identifying chemicals which cause heart disease and chemicals which cause cancer. There was a breakdown of the various departments and locations in the Cumberland plant where plaintiffs had worked and a listing of the chemicals to which plaintiffs had been exposed in those locations. Included also were affidavits of numerous plaintiffs identifying the departments where they worked, the chemicals to which they had been exposed and their health conditions. The departments in which the plaintiffs worked included, *inter alia,* the Final Finish Department, the Curing Department, the Mill Room, the Calendar Department, the Tube Room, the Tread Room, the Stock Preparation Department and the Maintenance Department.

Following its review of the voluminous evidentiary materials filed by defendant Goodyear in support of its motion and by plaintiffs in support of its two separate oppositions to that motion, this Court concluded in its earlier Opinion that plaintiffs were not entitled to conduct additional discovery before the Court ruled on Goodyear's motion for summary judgment. *Aldridge II,* 34 F.Supp.2d at 1020. The critical issue presented by defendant's motion was whether plaintiffs had produced evidence that "a particular identifiable chemical supplied by Goodyear" was a legal cause of their injuries. *McClelland I,* 735 F.Supp. at 174, *McClelland II,* 1991 WL 38700 at *3. After considering the discovery undertaken in *Heinrich* and that undertaken in *McClelland I,* all of which had been made available to plaintiffs, as well as the discovery which had earlier been conducted by plaintiffs in this case, this Court concluded that additional discovery could not reasonably be expected to add to the record here material evidence which would be relevant to the dis-

positive causation issue. Plaintiffs' request to undertake additional discovery was accordingly denied. *Aldridge II,* 34 F.Supp.2d at 1021.

Pursuant to the Fourth Circuit's remand of the case, the Court will now undertake to reexamine that decision in the light of the supplemented record before it.

### III

#### *Plaintiffs' Motion for Leave To Conduct Discovery*

In his zealous effort to avoid in this case the adverse result which this Court concluded was required by the rulings made by this Court and the Fourth Circuit in the *McClelland* cases, counsel for plaintiffs has paid little heed to what the Fourth Circuit has instructed counsel and this Court to do following remand. Counsel for plaintiffs has not specifically identified the small amount of relevant information believed to exist. Rather, plaintiffs have now sought in general terms an abundance of information, most of which has little relevance to the causation issue presented in the case. Counsel for plaintiffs here contend that they are entitled to discovery materials whether or not those materials were previously requested by plaintiffs before this Court granted summary judgment in favor of defendant Goodyear.

#### (a)

#### *Discovery Now Sought By Plaintiffs*

In its Opinion in *Aldridge III,* the Fourth Circuit repeatedly emphasized that on remand, plaintiffs were entitled to only "limited discovery." Throughout its Opinion, the Fourth Circuit used language describing the nature of the discovery which plaintiffs would be entitled to seek on remand. The word "limited" appears four separate times. *Aldridge, III,* 223 F.3d at 265, 266 and 267. In their briefs and arguments, plaintiffs have not complied with the specific instructions of the Fourth Circuit in remanding this case. They have not in their papers identified "very specifically that very small amount of information that they believe might exist..." *Id.* at 266. Nor have they heeded the Fourth Circuit's statement that its remand was not

intended to imply that plaintiffs "are entitled to duplicative discovery." *Id.*

The broad-ranging discovery sought by plaintiffs on remand can be grouped into thirteen different categories, as follows:

(1) information relating to Goodyear's supply of synthetic rubber, natural rubber, reclaimed rubber, tire fabric and talc;

(2) information relating to other products and chemicals which Goodyear brokered, distributed and/or specified, including information about contracts, identities, quantities, warnings and handling instructions;

(3) epidemiology and mortality studies. This category of information includes a mortality study for the Cumberland plant prior to 1965 and after 1984; epidemiology studies at Goodyear and subsidiary plants; a study made of Chinese synthetic rubber workers; the 1989 study of Niagara Falls workers; a study by Dr. Davis of 7,000 rubber workers; the study made by the International Institute for Synthetic Rubber Producers of workers' occupational exposure to synthetic rubber; OSHA studies; and data that Goodyear is required to compile pursuant to the Toxic Substances Control Act;

(4) communications from labor unions regarding occupational exposure to any material or chemical used at the Cumberland plant;

(5) deposition transcripts and reports of Goodyear's experts and witnesses;

(6) insurance and health records of Goodyear, Kelly–Springfield and labor unions for employees at the Cumberland plant and at any other Goodyear plant;

(7) facts pertaining to prior claims made against Goodyear arising from workers' occupational exposure to products which Goodyear distributed to the Cumberland plant;

(8) information relating to health and safety services which Goodyear provided to Kelly–Springfield, including Goodyear's role in the creation of so-called "pass outs" and steps taken by Goodyear and Kelly–Springfield in responding to the NIOSH

Infante study of the causal link between benzene and leukemia;

(9) facts pertaining to notices of violations of occupational safety laws at the Cumberland plant since 1983;

(10) communications between Goodyear and Kelly–Springfield regarding the latter's decision not to provide certain information to MOSH;

(11) specific chemical and product information, including the results of internal testing by Goodyear of various chemicals;

(12) information relating to workers' exposure to nitrosamines, carbon disulfide and other fumes in various locations in the Cumberland plant, including the Tube Room, the Stock Preparation Department, the "new" department within the Warehouse and Shipping Department, and the Final Finish Department; and

(13) authentication of the employment history and medical records of twelve named plaintiffs.

In requesting that this Court permit them to undertake the extensive discovery listed hereinabove, plaintiffs have not complied with the Fourth Circuit's Opinion in *Aldridge III*. Many of plaintiffs' pending requests seek duplicative discovery. Many other requests were never presented to this Court before it granted Goodyear's motion. Moreover, much of the information now sought by plaintiffs has no relevance to the critical issue of causation.

Some of the information sought by plaintiffs in the above categories was previously requested by plaintiffs in counsel's Rule 56(f) affidavits, and plaintiffs' requests for that information will be addressed hereinafter. Since other information listed in the above thirteen categories was never previously requested, the Court will not permit plaintiffs to conduct further discovery relating to that information.

(b)

*Plaintiffs' Prior Requests for Discovery*

As noted, Goodyear's motion for summary judgment was filed on December 13, 1996.[4]

---

**4.** As a result of the intervening proceedings which led to the Fourth Circuit's remand in

*Aldridge I,* this Court did not address the merits

Although there had already been some discovery undertaken in this case, and although plaintiffs had access to discovery in the *Heinrich* and *McClelland* litigations and had submitted three volumes of documents as "Master Exhibits," plaintiffs asked Judge Smalkin to permit them to conduct further discovery before they filed their opposition to the motion. In his Order of January 27, 1997, Judge Smalkin directed plaintiffs to furnish affidavits pursuant to Rule 56(f), indicating why sufficient facts were not already available to support plaintiffs' opposition to Goodyear's motion for summary judgment.

Six separate affidavits of their attorney were then submitted by plaintiffs in February and March of 1997. These were the only Rule 56(f) requests which were before this Court when it ruled that plaintiffs were not entitled to additional discovery because extensive discovery had previously been undertaken in the *Heinrich* and *McClelland I* litigations and because all of this discovery was available for counsel in this case. The Fourth Circuit has ruled that plaintiffs on remand are entitled to seek only those documents and that information which were responsive to their previous "requests" and which "have not previously been disclosed in one or the other of the litigations." *Aldridge III*, 223 F.3d at 266.

In disregard of the Fourth Circuit's directive, plaintiffs have made numerous new and additional requests which were not previously before this Court. These new requests will not be considered by this Court. When, as here, an adverse ruling has been rendered by a court in deciding a motion for summary judgment, the losing party is not entitled to reopen the record, obtain additional discovery not previously requested and then reargue the motion for summary judgment. Before responding to Goodyear's motion for summary judgment, plaintiffs were permitted to file affidavits under Rule 56(f).

They did so, and they are not, after this Court has ruled on defendant's motion for summary judgment, entitled to expand their earlier requests. *RGI, Inc. v. Unified Industries, Inc.,* 963 F.2d 658, 662 (4th Cir. 1992). This Court, in deciding whether plaintiffs are entitled to additional limited discovery, will confine its inquiry to the requests which were previously made by the plaintiffs and which are contained in the six affidavits of their attorney.

(c)

*Plaintiffs' Rule 56(f) Affidavits*

The six Rule 56(f) affidavits submitted by plaintiffs' attorney to Judge Smalkin in February and March of 1997 have been attached as exhibits to plaintiffs' motion for leave to conduct further discovery. Four of the affidavits contain only one page. Each one of these four sought information relating to the working conditions of one or more different plaintiffs. In particular, discovery was requested with reference to nitrosamines and other chemicals present in the Tube Room, the Curing Department, the Warehouse and Shipping Department, and the Tire Building. From a review of the voluminous documents filed by defendant in opposition to plaintiffs' pending motion, this Court concludes that the information sought in those four affidavits was available to plaintiffs as a result of discovery undertaken in the *Heinrich* and *McClelland* litigations.[5]

Particularly pertinent is the deposition testimony of Michael W. Smith taken by plaintiffs' counsel in the *Heinrich* case in December, 1985. Smith was for many years Goodyear's Environmental Coordinator for the Governmental Environmental Safety and Health Assurance Programs. His principal function was to implement company compliance with the Toxic Substance Control Act ("TOSCA"), and he was responsible for tracking Goodyear's use and distribution of chemicals. During his deposition, he testi-

of Goodyear's motion for summary judgment until some two years after it was filed.

5. In support of its opposition to plaintiffs' pending motion, defendant Goodyear has submitted nine loose leaf volumes containing thousands of pages of discovery materials previously produced in the *Heinrich* and *McClelland* litigations. Included, *inter alia,* are depositions of key Goodyear personnel, answers to interrogatories, mortality studies, purchase order sheets of Kelly-Springfield, records disclosing yearly shipments of chemicals from Goodyear to Kelly-Springfield, and yearly insurance company surveys of dust, vapors and airborne chemicals at the plant.

fied at some length about chemicals manufactured by Goodyear and supplied to Kelly–Springfield. Reference was made to data produced by Goodyear disclosing every chemical used in the Cumberland plant since 1936, including information disclosing the exact location where each chemical was used and how each chemical was used in the manufacturing process.

Information pertaining to the testing of certain chemicals has also been provided. The information provided by Mr. Smith and by documents made available to plaintiffs was used by plaintiffs in the preparation of their voluminous exposure summaries which were included as a part of plaintiffs' 299 page opposition to defendant's motion for summary judgment. Included among the documents produced were Chemical Hazard and Toxicity ("CHAT") monitoring records. These documents identified all chemicals used at the plant since 1936, as well as the periods of their use, and provided exposure data for all areas of the plant for the ten year period from 1977 to 1987. CHAT records for each particular plaintiff were provided by Goodyear. This discovery, which was previously produced during the *Heinrich* and *McClelland* litigations, satisfied the Rule 56(f) requests made by counsel on behalf of individual plaintiffs and contained in the four affidavits in question.

The fifth affidavit (nine pages in length) lists fourteen different plaintiffs and seeks specific information relating to their claims as well as some general information.[6] The sixth affidavit (seven pages in length) seeks a wide variety of general information and purports to address "some of the strict product

liability issues that are applicable to all of the Plaintiffs."

Discovery requested in the fifth and sixth affidavits can be divided into three separate categories: (1) information previously available to plaintiffs as a result of discovery undertaken in the *Heinrich* and *McClelland* litigations; (2) information not relevant to the dispositive issue of causation and (3) information which arguably may not have been previously available to plaintiffs before they filed an opposition to defendant's motion for summary judgment.

■ Most of the information now sought by plaintiffs falls into the first two categories listed above. In the third category, there are five possible areas which plaintiff now argues relate to discovery not previously available to them, namely (1) the types and composition of synthetic rubber supplied by Goodyear; (2) the constituents of tire fabric; (3) Goodyear's knowledge of risks and hazards posed by chemicals supplied; (4) information relating to quantities of chemicals supplied; and (5) updated mortality studies and death certificates.[7]

Counsel for plaintiffs have argued at some length that information has not been provided relating to "synthetic rubber." In the *Heinrich* case, Goodyear produced a detailed description of synthetic rubbers used by Kelly–Springfield at the Cumberland plant, as well as the constituents of each synthetic rubber. The following synthetic rubbers were identified: Brominated Isobutylene–Isoprene Copolymer, Butadiene Styrene Copolymer (Crendic), Chlorobutyl Rubber, Chloroisobutylene–Isoprene Rubber, Chlorosulfonated Polyethlyne Rubber, Cold Black

---

6. In that affidavit, the fourteen plaintiffs in question requested affirmation of the authenticity of methodology exhibits, quantity sheets, the NIOSH Health Hazard Evaluation Report, doctors' reports, medical records, and employment histories. In responding to those requests, Goodyear did not question the authenticity of those documents. In response to other requests in that affidavit, Goodyear has acknowledged that the Passenger Tire Building Department at the plant has been known as Department 511 and Department 51A.

7. At the hearing on plaintiffs' motion, their attorney argued that information pertaining to talc

and asbestos had not been supplied by Goodyear. No such information was requested in the six Rule 56(f) affidavits submitted by plaintiffs to Judge Smalkin. In any event, evidence of record establishes that Goodyear did not supply rubber processing materials containing talc or asbestos to Kelly–Springfield. *Aldridge II,* 34 F.Supp.2d at 1022, n. 19. Rubber from Goodyear did not arrive at the plant covered with talc. The talc referred to in counsel's arguments was not located on rubber delivered by Goodyear to Kelly–Springfield in box cars but was later placed by plant workers on rubber stored in the room located above the loading dock.

Masterbatch SBR, Cold Oil Black Masterbatch SBR, Cold Oil Masterbatch SBR, Copolymer of Styrene and Butadiene, Cured Butyl Rubber (Diced), EPDM, Bale, EPDM Rubber, EPDM Terpolymer, Ethylene/Propylene Copolymer, Oil Extended, Ethylene Propylene Diene Modified Rubber, Ethylene–Propylene Rubber, Ethylene–Propylene Terpolymer, High CIS Polybutadiene Homopolymer Rubber, Oil Extended High CIS Polybutadiene Homopolymer, Polybutadiene Oil Black Masterbatch, Polybutadiene Homopolymer, Polybutadiene Rubber Oil Extended, Polyisoprene Rubber, SBR Block Copolymer, SBR Copolymer, SBR Bale (Coolbric), SBR Black Masterbatch, SBR Latex, SBR Oil Black Masterbatch, SBR with Carbon Black, SBR Rubber (Kurtic–A), SBR Rubber Oil Extended and Silicone Rubber. It is clear from the record here that detailed information relating to synthetic rubbers, as well as information relating to natural rubbers and reclaimed rubbers, has previously been produced by Goodyear and that all of this information was available to be analyzed by plaintiffs' experts.

Plaintiffs also ask to be permitted to conduct discovery with respect to the constituents of tire fabric. However, tire fabric is a cloth which is generally made of polyester or nylon and which has no constituents that produce hazardous chemical exposures.

It is argued by plaintiffs that Goodyear has not provided discovery concerning its prior knowledge of the propensities of chemicals supplied by it and of the risks and hazards posed by these chemicals. But such information, which might be discoverable in a failure to warn case, is not relevant to the causation issue which was dispositive in this case. As this Court has previously held, negligence and fraud theories are not maintainable by plaintiffs in this case because it cannot be determined from facts of record that any identifiable chemical, whether or not supplied by Goodyear, in fact caused plaintiffs' many illnesses. *Aldridge II*, 34 F.Supp.2d at 1022. Accordingly, Goodyear had no duty to warn Kelly–Springfield about the use or presence of chemicals supplied by others nor any duty to provide handling instructions for those

chemicals. *Id.* Discovery relating to these matters is therefore not relevant to the dispositive issue in this case.

Plaintiffs further contend that quantity information has not been provided for the nineteen month period between 1985 and 1987 when the plant closed down. However, evidence of record establishes that the process of manufacturing tires at the Kelly–Springfield plant did not change in forty or fifty years. According to an affidavit submitted by Goodyear, quantity sheets showing inventory at the plant between 1985 and 1987 are no longer in existence and were probably thrown out when the plant was closed in 1987.[8]

According to plaintiffs, they are entitled to mortality studies and death certificates for all Kelly–Springfield workers from 1985 until 2000. But plaintiffs are entitled only to that additional discovery which might reasonably be expected to lead to evidence supporting their theories of causation. *Aldridge III*, 223 F.3d at 266. When this Court granted Goodyear's motion for summary judgment, the record before it included mortality studies and death certificates of most of the deceased plaintiffs. Although these documents disclosed the various causes of death, they had little or no relevance to the primary question before the Court, namely whether plaintiffs had produced evidence that "a particular identifiable chemical supplied by Goodyear" was a legal cause of the injuries sustained and the later deaths. *Aldridge II*, 34 F.Supp.2d at 1019. The issue before this Court was whether one or more chemicals supplied by Goodyear constituted "an independently sufficient cause of harm" and thus "a substantial contributing factor" in causing plaintiffs' injuries. *Id.* at 1020. A coroner or physician who was not present in the plant during the years in question could hardly be expected to provide relevant evidence concerning the mix of identifiable Goodyear chemicals to which a worker had been exposed. Updated mortality studies and death certificates of Kelly–Springfield workers who are not plaintiffs, like mortality studies and death certificates of plaintiffs which have already been included in the summary judg-

8. Ten years of quantity sheets were previously produced by Goodyear.

ment record before the Court, would not be of assistance to plaintiffs in attempting to avoid the entry of summary judgment against them.[9] If made a part of the record, the evidence sought would not result in the creation of a disputed issue of fact.

## IV

### Conclusion

In sum, after an exhaustive review of the thousands of pages of discovery materials which were available for use by plaintiffs when they filed their opposition to Goodyear's motion for summary judgment, this Court concludes that the documents heretofore produced "are fully responsive to all of the individual requests by these plaintiffs." *Aldridge III*, 223 F.3d at 266. This Court is therefore satisfied that plaintiffs are not, following remand, entitled to further discovery in this case.

It is apparent from a review of plaintiffs' memoranda that they earnestly hope that something helpful may turn up in further discovery. *Goodell v. Rehrig International, Inc.*, 683 F.Supp. 1051, 1054 (E.D.Va.1988), *aff'd*, 865 F.2d 1257, 1989 WL 1132 (4th Cir.1989). But a mere hope of this sort "does not satisfy the standards of Rule 56(f)." *Id. See also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 925, 927 (2d Cir.1985).

Since plaintiffs may not present further evidence to the Court in opposition to defendant's motion for summary judgment, this Court will reaffirm its previous conclusion that defendant's motion for summary judgment must be granted as to all claims of all plaintiffs asserted in these consolidated cases and that judgment must be entered in favor of defendant Goodyear in each of these sixty-six cases. An appropriate Order will be entered by the Court.

---

**9.** Employment history and medical records of certain plaintiffs are also sought. Information of this sort is likewise not relevant to the dispositive causation issue.